(No. 4974—

RICHARD J. KNARR, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 25, 1965.*

FISHMAN AND FISHMAN, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; EDWARD A. WARMAN AND GERALD S. GROBMAN, Assistant Attorneys General, for Respondent.

PEZMAN, J.

Claimant, Richard J. Knarr, brings this action for injuries received while on active duty with the Illinois National Guard. The claim alleges an injury caused by the negligence of an employee of respondent, and bases recovery upon a common law theory asserting that claimant be compensated in accordance with all of the elements of damage, which are applicable in such common law actions.

Respondent denies the right of claimant to an option of either instituting this cause of action as in tort, or under the Military and Naval Code. Respondent urges that all previous decisions of the Court of Claims relating to injured National Guardsmen were based solely on the aforementioned Military and Naval Code of the State of Illinois.

On May 22, 1960, claimant, Richard J. Knarr, was a member of the Illinois National Guard, and was on active duty at a weekend meeting, which was held at 119th Street and Ridgeland Avenue in Cook County, Illinois. At about 2:30 P.M., James E. Getz, also a member of the National Guard, while in the line of duty, was operating a power lawn mower on the south side of a mess hall at the aforesaid National Guard site. According to Private Getz's statement, which is set forth in the Departmental Report, as he came to the sidewalk, he was unable to control the mower due to a twisted belt. Other witnesses stated that he attempted to turn the mower on the sidewalk. As he reached the sidewalk, he noticed that claimant was walking along said sidewalk. He shouted a warning to him to prevent the mower from hitting him, but claimant fell, as he attempted to avoid the mower, and the power mower struck him on the right foot. Claimant's right foot was caught in the blade of the power lawn mower, which cut through his army combat boot, and severely wounded his right foot. He was immediately taken to the orderly room where a tourniquet was placed upon his right leg. He was thence removed to St.

Francis Hospital in Blue Island, where an emergency operation was performed by Drs. Norman S. Schwartz and Albert L. Sheetz. Claimant remained at St. Francis Hospital from May 22, 1960 to June 9, 1960, and was then transferred to the Great Lakes Naval Hospital, where he remained from June 9, 1960 until August 15, 1960. Following his release from said Great Lakes Naval Hospital, claimant was under continual medical treatment until he was again hospitalized at the Great Lakes Naval Hospital from February 6, 1962 until April 9, 1962.

Claimant suffered a deep wound of the dorsum, or top of the right foot. He had a severance of the numerous extensor tendons and muscles, and there were fractures of the metatarsal bones. The first metatarsal bone had comminuted type fractures of the anterior portion of the entire length of its shaft, which was accompanied by considerable loss of bone substance. There was also a transverse fracture in the midshaft of the first metatarsal, and an oblique fracture of the second metatarsal. The medical testimony of Dr. Schwartz set the number of fractures or fragments to be from twenty-five to thirty. There were serious involvements of nerves, tendons, muscles, soft tissues and blood vessels of the right foot. The extensor tendons, digital artery and nerve of the first toe were severed. There was a contracture of the joint of the first metatarsophalangeal joint, and a dislocation of the metatarsal cuneiform joint. Claimant's doctor testified that the injury to the right foot was permanent in nature, but was unable to specify the percentage of permanent disability. On August 21, 1962, the U.S. Army Physical Evaluation Board issued a report, which found claimant physically fit for duty.

At the time of his injury, claimant had a civilian job with the Illinois National Guard as a Supply Specialist, and was earning $4,940.00 per year. In addition to this, he was

also an active military member of the Guard, which increased his earnings sufficiently to make a gross total of $5,200.00 per year. From the time of his injury until April of 1962, claimant was kept on an active duty disability status by the Illinois National Guard, and during that time he received compensation in the sum of $269.00 per month. After his release from the Guard, claimant started a completely new job with the Continental Casualty Company, and at the time of the hearing was earning $450.00 per month. Claimant asserts that he lost the difference between his gross salary of $5,200.00 a year, prior to the occurrence of the accident, and the $269.00 a month, or $3,552.00 a year, which he received while on a disability status, or the sum of $3,296.00.

The Supplemental Departmental Report, which was submitted by the Military and Naval Department of the State of Illinois, was admitted into evidence as respondent's exhibit No. 2. It stated that claimant served continuously in the National Guard until September 7, 1962, when he was discharged by reason of his removal from the State of Illinois. It further indicates as follows:

"4. Under Public Law 108, 81st Congress, Specialist Knarr was entitled to and received medical treatment, hospital care, pay, allowances and travel reimbursement. The following payments were made from federal funds during the period of incapacitation:

| | |
|---|---:|
| Pay, allowances and travel reimbursement | $6,573.76 |
| Civilian medical and hospital bills | 875.05 |
| Civilian federal technician sick pay | 570.00 |
| Total: | $8,018.81 |

"5. In addition to the payments made above, all expenses incurred during the periods of hospitalization at the U.S. Naval Hospital, Great Lakes, Illinois, (a federal facility) were paid from the Army Medical Services Activities Fund at Department of the Army level."

Upon conclusion of oral argument by counsel for the parties before the Court of Claims, it was agreed that a further medical evaluation of the injuries of claimant would

be obtained, and filed with this Court. On August 7, 1964, a letter of Dr. Harry E. Barnett, 116 South Michigan Avenue, Chicago, Illinois, was filed with the Clerk of the Court, and admitted in evidence by agreement of the parties. Dr. Barnett's diagnoses were as follows:

"1. Initial multiple lacerations of the right foot involving primarily the first metatarsophalangeal region.

"2. Healed fracture with varus deformity of the right first metatarsal bone.

"3. Severance of extensor tendons of right great toe with residual flexion deformity at the metatarsophalangeal joint.

"4. Marked derangement of bony alignment with secondary arthritic changes at the right first metatarsophalangeal joint."

In this medical report, Dr. Barnett estimates a partial disability of 40% of the function of the right foot, and further states that it is his impression that the patient will require an arthrodesis of the first metatarsophalangeal joint of the right great toe.

The case at hand is clearly one in which claimant should be reimbursed for his injury. He is not entitled to the full measure of damages that he would receive in an ordinary common law action, nor has he any right to bring his action in this instance under Section 8D of the Court of Claims Act. All previous decisions of the Court relating to injuries suffered by Illinois National Guardsmen were based solely on the aforementioned Military and Naval Code of the State of Illinois. This Court has held that claimant may invoke the jurisdiction of the Court when the disability exceeds a period of six months, and he shows a need for financial help and assistance in addition to that provided under the Military and Naval Code. (*Insalato* vs. *State of Illinois*, 12 C.C.R. 27)

The Court of Claims in *Durnham* vs. *State of Illinois*, 23 C.C.R. 28, established a basis for determining the amount of financial help and assistance, which an injured National

Guardsman would be entitled to, by using the Workmen's Compensation Act as a guide. In that case, the Court considered claimant's percentage of permanent disability, his loss of wages during the period of incapacitation, and the amount received by claimant from the Federal Government as compensation for the same injuries.

This Court changed its standards of recovery in *Ward* vs. *State of Illinois*, 24 C.C.R. 229, when it stated:

"We recognize that there have been a few instances where this Court did not follow its general practice of using the Workmen's Compensation Act as a gauge to the amount of recovery allowed in personal injury and death cases under the Military and Naval Code, as in the *Dudley* case, cited above, and *Roberts* vs. *State of Illinois*, 21 C.C.R. 406. We find, however, that recovery based on established standards is essential to the dispensing of equal justice.

"We shall henceforth allow claimants in personal injury or death cases brought pursuant to the Military and Naval Code, Sec. 220.53, and similar provisions, to recover an amount no greater than the maximum prescribed for similar claims under the Workmen's Compensation Act in effect in the State of Illinois at the time the injuries were incurred. We are cognizant that in most cases the Federal Government has made substantial payments to the injured person and his survivor. In determining the extent of aid to be contributed by the State, we will disregard any payments from the Federal Government or other sources.

"The ruling of the Court herein does not conflict with the decision of the Supreme Court in *Hays* vs. *Illinois Transportation Co.*, 363 Ill. 397, which held that the Workmen's Compensation Act does not apply to those in military service, since the Compensation Act is only being used as a guide in determining the extent of our awards, and the cases acknowledgedly arise under the Military and Naval Code."

The Supplemental Departmental Report, set forth hereinabove, indicates that claimant received certain specific payments providing for medical treatment, hospital care, pay, allowances and travel reimbursement. We are, therefore, faced with considering only two elements in determining the ad damnum to which claimant is entitled.

1. Lost wages during the period of incapacitation in the form of the difference between the amount actually received by the injured person during that period when he

was out of work as a result of the injury, and the amount received or granted under the Workmen's Compensation Act as temporary total disability. In this cause of action the injured party actually received more compensation on active duty disability status from the Illinois National Guard than he would have received as temporary total disability under the Workmen's Compensation Act.

2. Claimant's percentage of permanent disability. In considering this element, the Court of Claims has previously accepted the Workmen's Compensation Act as a guide in determining damages. Using the medical report of Dr. Harry E. Barnett, dated July 22, 1964, we find that claimant for all practical purposes has no function at all of the great toe of the right foot. Medically, the amputation or loss of the great toe is considered as 20% total impairment of the foot. The reason for this is that the main function of the great toe is to provide balance. Accordingly, a complete ankylosis of the great toe, without amputation, is usually medically rated at only about 15% of the foot, since much of the function of balance still remains after ankylosis. In addition, claimant has a mild limitation of motion of the second toe, which has relatively little functional ability, as well as some scarring on the top of the foot. This might be rated medically at about 5% of the foot, or a total impairment of 20% of the foot.

In converting "impairment" from a medical standpoint to the industrial "permanent disability", other factors are usually considered. In this case, claimant is quite young, and was obviously in excellent physical condition before the accident. In addition, it appears that an arthrodesis, or fusion of the inner joint of the great toe, is probable. The evidence in the form of a medical report by Dr. Harry E. Barnett estimates a partial disability of 40% of the function of the right foot, and also indicates that the patient will re-

quire an arthrodesis of the first metatarsophalangeal joint of the great right toe. This evidence is not controverted. Claimant, Richard J. Knarr, at the time of the accident was married, and had one child. Under the rates established by the Illinois Industrial Commission, compensation for 40% of the loss of the right foot would be $3,286.00.

Claimant is, therefore, awarded the sum of $3,286.00.